# IN THE COURT OF APPEALS OF IOWA

No. 17-1010
Filed August 16, 2017

**IN THE INTEREST OF L.R.,**
**Minor Child,**

**M.R., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Muscatine County, Thomas G. Reidel, Judge.

A mother appeals from a dispositional order and the removal of her child from her custody. **AFFIRMED.**

Christine E. Boyer, Iowa City, for appellant mother.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Mark J. Neary of Neary Law Office, Muscatine, guardian ad litem for minor child.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**DANILSON, Chief Judge.**

A mother[1] appeals from a dispositional order and the removal of her child, L.R., from her custody. The mother contends there is not clear and convincing evidence supporting the grounds for adjudication of the child as a child in need of assistance (CINA), there was insufficient evidence to order the child's removal, and reasonable efforts to achieve reunification were not provided. Because the record reflects the mother's progress in addressing her mental-health issues has not eliminated the imminent likelihood L.R. will suffer harm and will not receive adequate care, we affirm.

L.R., born October 2016, is under the age of one. The mother is diagnosed with histrionic personality disorder, factitious disorder imposed upon another with a rule out[2], and borderline intellectual functioning. The mother's mental-health issues interfere with her ability to maintain stability in general life functions and to process information, and they cause the mother to engage in attention-seeking behavior. For example, the mother mismanages finances—often buying unneeded clothing and toys for her children and then struggling to retain money to pay rent and utilities bills. Additionally, the mother has frequently moved residences and, when able, has kept an unreasonably large number of animals in her home.

---

[1] The father does not appeal.

[2] Factitious disorder imposed upon another is a syndrome formerly known as Munchausen by Proxy. As defined in the mother's psychological evaluation report, "[t]he essential feature of factitious disorder is the falsification of medical or psychological signs and symptoms in oneself or others that are associated with the identified deception." The report also explained that proof of intentional falsification must be present for a diagnosis of factitious disorder imposed upon another. The "rule out" means the disorder could not be certainly diagnosed because the mother had not yet been directly caught knowingly administering unneeded medication to E.R., L.R.'s older sibling. Following the evaluation, the mother admitted to knowingly administering seizure medication to E.R. in a way that was not prescribed by doctors.

More concerning is the danger posed to L.R. due to the mother's factitious disorder imposed upon another. L.R.'s older sibling, E.R., was removed from the mother's care because the mother was administering seizure medication to E.R. despite knowing the medication was not needed. A department of human services (DHS) worker reported the mother overfeeds L.R. and feeds L.R. inappropriate food, causing L.R. to vomit. Instead of taking L.R. to a pediatrician, the mother took L.R. to a chiropractor to address the vomiting. The mother did not heed the advice of professionals when told she was overfeeding L.R., and she directed L.R.'s daycare provider to continue feeding L.R. the same quantity of food. The mother also directed the daycare provider to continue treating L.R. for eczema when L.R.'s eczema had already cleared up.

L.R. was adjudicated a CINA on May 3, 2017, pursuant to Iowa Code section 232.2(6)(c)(2) and 232.2(6)(n) (2017). After a hearing held July 6, the district court concluded the mother had not made the necessary progress in addressing her mental-health issues to ensure L.R.'s safety and entered a dispositional order removing L.R. from the mother's care.[3] The mother now appeals.

Our review of child-in-need-of-assistance proceedings is de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight. Our primary concern is the child[ ]'s best interests." *Id.* "CINA determinations must be based upon clear and convincing evidence." *Id.* at 41.

---

[3] L.R. was placed in family foster care with E.R.

Pursuant to Iowa Code section 232.2(6)(c)(2), a CINA means a child "who has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, . . . to exercise a reasonable degree of care in supervising the child." And section 232.2(6)(n) defines a CINA as a child "[w]hose parent's . . . mental capacity or condition, . . . results in the child not receiving adequate care." In the adjudicatory order, the district court explained:

> [T]he mother has histrionic personality disorder, which caused her to misinterpret [E.R.]'s behaviors and to exaggerate those behaviors and make decisions based upon a desire for attention which put [E.R.] in harm's way, and caused [E.R.] to experience traumatic events. The mother is still suffering from that diagnosis. She has a significant history of lying, which includes lying about a pregnancy. The court finds that the mother lied to medical professionals about [E.R.]'s health, misinterpreted [E.R.]'s health, and the mother failed to follow doctor's directions in the treatment of [E.R.] All of these issues are still present and create an imminent risk to [L.R.]

Also, as noted by the court at the conclusion of the dispositional hearing, the mother has continued to exhibit concerning behavior with respect to L.R.'s medical care. The court stated:

> As stated, [E.R.] is actually at an age where she's able to verbalize, where she's visible in the community, and [L.R.] does not have those benefits or strengths as this point in time. We also must understand that while [the mother] has been caring for [L.R.], she has been under the watchful eye of many, many individuals. The fact that she would not go to date as far as she did with [E.R.] is reasonable in light of all that observation.
> But nonetheless she has taken actions that show that there's still a strong temptation for that and a strong likelihood that that will only escalate for her coming up with a full diagnosis for the child that could place the child in danger, . . .
> We've heard about the overfeeding, vomiting, the false information given to the daycare about the child's mobility. It's concerning to the Court that she elected to take the child for the vomiting disorder to the chiropractor rather than the pediatrician. The Court thinks the only rational reason for that would be that she

was concerned the pediatrician would acknowledge or readily be able to diagnose that she was not properly feeding the child . . . .

Additionally, we have a condition of eczema that is cleared up, and yet she is still, as recently as May 31st, directing the daycare provider to continue to treat this disorder that no longer is existing.

Furthermore, she had made a comment to the DHS worker, Ms. Blake, that the child had a follow-up appointment for whooping cough, despite the fact that that was never diagnosed.

. . . .

The Court finds in this case that [L.R.] cannot be protected from harm and that that would justify an adjudication . . .

We find the record supports adjudication under section 232.2(6)(c)(2) and (n). While the mother's participation in services and progress is commendable, the evidence in this case reveals the child is still at risk for adjudicatory harm. The mother has exhibited an inability to heed the advice of professionals regarding appropriate child care and to provide stability, and has engaged in behavior reflecting a continuing problem with properly analyzing, reporting, and treating L.R.'s medical needs and health. Although the mother has not yet exhibited life-threatening behavior with respect to L.R.—as she did with E.R.—we find the mother's actions viewed cumulatively indicate L.R. is at imminent risk of harm and likely to receive inadequate care until such time the mother has fully learned to cope with her factitious disorder imposed upon another. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) ("We have previously said 'our statutory termination provisions are preventative as well as remedial.' They are designed to prevent probable harm to the child . . . ." (citation omitted)). We therefore affirm L.R.'s adjudication as a CINA and the court's dispositional order removing L.R. from the mother's custody and care.

The mother also challenges the district court's finding that DHS has made reasonable efforts toward reunification. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent."). This claim alleges the State presented no evidence that the mother was not making sufficient strides in her current counseling and the State failed to provide treatment specifically for factitious disorder imposed upon another.

DHS is providing the mother a myriad of services including assessment and safety services; weekly parenting skill development, including resource allocation and referral; supervised interactions and transportation; family team meetings; psychiatric evaluation; parent/child interaction therapy; and coordinating L.R.'s medical and reviewing L.R.'s medical records. The mother is also receiving services from the Healthy Opportunities for Parents to Experience Success program, the family development and self-sufficiency program, and Iowa 1st Five. Most significantly, the mother has participated in individual therapy since July 2016 and began the Systems Training Emotional Predictability Problem Solving (STEPPS) program in April 2017.

The mother contends DHS has not made reasonable efforts because it has not offered services to specifically address her factitious disorder imposed upon another. However, the mother is being offered a great deal of services, including mental-health counseling. Additionally, the STEPPS program is specifically designed to address borderline personality disorders. We are not able to determine which diagnosis or potential aliment should be treated first and, accordingly, cannot reach the conclusion that the State's many and varied

services are insufficient. By all indications, the State has taken reasonable steps to date and the mother has not made sufficient strides. However, we also agree that if removal continues, at some point in time it may be necessary to require further psychiatric evaluation to rule out or diagnose with finality the mother's factitious disorder imposed upon another, and if diagnosed with the condition, to specifically address such a diagnosis. At this juncture, we agree with the district court's finding that reasonable efforts have been established.

We conclude clear and convincing evidence supports the district court's adjudication of L.R. as a CINA, removal of L.R. from the mother's care, and the finding that reasonable efforts toward reunification are being made. We therefore affirm.

**AFFIRMED.**